# UNITED STATES DISTRICT COURT
# IN THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| JULIE A. SU,<br>Acting Secretary of Labor,<br>United States Department of Labor,<br><br>    *Plaintiff*,<br><br>v.<br><br>TOSH PORK, LLC, and DIANNA ROSA,<br><br>    *Defendants*. | Case No. 1:24-cv-01038 |

## NONPARTIES' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL TESTIMONY

Ms. María Concepción "Katy" Cazares Franco ("Ms. Cazares Franco") and Mr. Carlos Alberto Almaras Villegas ("Mr. Almaras Villegas") (collectively, "Nonparties") hereby file this response in opposition to Defendants' Motion to Compel Testimony because the testimony that Defendants seek to compel is protected by the marital communications privilege. Throughout discovery, Tosh Pork, LLC ("Tosh Pork") and Dianna Rosa ("Defendants"), have demanded Nonparties' protected spousal communications. Nonparties have asserted the marital privilege over those communications because they are in a civil marriage under the laws of Mexico, and Tennessee state law recognizes valid foreign marriages. The privilege has been consistently asserted, except for a partial waiver with respect to a narrow subject matter: their communications about the decapitated pig's head that was placed in Mr. Almaras Villegas' work area. In addition to disclosing those spousal communications, Nonparties have provided the parties extensive information regarding the allegations in Plaintiff's Complaint, including hearing testimony, videos and other electronically stored information, and, most recently, two

days of deposition testimony. Defendants now seek to compel Ms. Cazares Franco and Mr. Almaras Villegas each to sit for a continued deposition to testify about broad categories of protected spousal communications, but Defendants' attempts at rebutting Nonparties' valid marriage and the presumed confidentiality of their communications fail. The Court should deny the Motion.

## FACTS

Ms. Cazares Franco and Mr. Almaras Villegas are citizens of Mexico present in the United States on valid TN visas. Complaint, ECF No. 1 ¶ 7.[1] In 2021, Tosh Pork hired Nonparties to work at the company's pig's farm in Henry County, Tennessee. *Id*. For the three years prior to 2021, Nonparties lived together in Michoacán, Mexico. ECF No. 79-2, Excerpts from Sept. 17, 2024 Dep. of Carlos Almaras Villegas, 15:19-16:3 ("Almaras Villegas Dep."). Since 2014, they have been in a committed civil union (known as a "concubinato" in Spanish or "concubinage" in English), which is recognized under Mexican law as a type of civil marriage. *Id*.; Excerpts of Sept. 16, 2024 Dep. of María Concepción Cazares Franco, 52:24-53:12 ("Cazares Franco Dep.") (attached hereto as Exhibit A). During that time, they had a child together. ECF No. 79-2, Almaras Villegas Dep. 14:25-15:1. When Tosh Pork hired Nonparties in 2021, it knew that they were in a Mexican civil union. Ex. A, Cazares Franco Dep. 53:9-12.

Plaintiff filed this action on February 21, 2024, seeking to enjoin Defendants from retaliating against their employees in violation of the anti-retaliation provision of the Fair Labor Standards Act ("FLSA"). *See generally* ECF No. 1. The Complaint alleges that Defendants retaliated against Ms. Cazares Franco (referred to in the Complaint as "Complainant") and Mr.

---

[1] The TN visa allows citizens of Mexico or Canada to work in the United States for three years, subject to extension and renewal. *Id*. ¶ 6 n.2.

Almaras Villegas (referred to as "Spouse"), after Ms. Cazares Franco filed a complaint with the DOL Wage and Hour Division. *See id.* ¶¶ 7, 20. The day after filing the Complaint, Plaintiff filed a Motion for a Temporary Restraining Order and Preliminary Injunction. *See* ECF Nos. 9, 9-1. The Court held an evidentiary hearing regarding that motion on March 19 and April 3, 2024 ("TRO/PI Hearing"). *See* ECF Nos. 22, Tr. of Mar. 19, 2024 TRO/PI Hearing; 26, Tr. of April 3, 2024 TRO/PI Hearing. Nonparties, who were not yet represented by counsel, testified in that hearing. Both testified that they were husband and wife. ECF Nos. 22 at 55:1-2; 26 at 29:13-14. They also testified about the communications they had with each other concerning the pig's head that was placed in Mr. Almaras Villegas' work area. ECF Nos. 22 at 78:16-79:2; 26 at 66:6-18. Those communications were the only spousal communications they disclosed during the hearing. *See generally* ECF Nos. 22; 26.

On April 24, 2022, Defendants issued subpoenas to Ms. Cazares Franco and Mr. Almaras Villegas demanding electronic copies of their personal cellular telephones and documents in response to thirteen requests, including "all communications with any Tosh Pork employees regarding overtime wages . . . and wages and benefits" and "all communications with any person and/or agency, other than the Department of labor, relating to wages, benefits, and/or working conditions at Tosh Pork." *See* ECF Nos. 35-1 at 3-4; 35-2 at 3-4. On May 8, 2024, Ms. Cazares Franco and Mr. Almaras Villegas served their responses and objections to the subpoenas, objecting to certain requests on various grounds, including that the communications sought between Nonparties were protected by the marital communications privilege. *See* ECF Nos. 35-5 at 3-4, 9-10, 13-16; 35-6 at 3-4, 9-10, 13-16. Nonparties partially waived the privilege as to their communications about the pig's head, and they produced the messages and videos exchanged between them about the same. ECF No. 46 at 5 & n.3. On May 15, 2024, Nonparties

3

filed a Motion to Quash or Modify the Subpoenas and for a Protective Order, arguing, *inter alia*, that Defendants' subpoenas demanded production of privileged spousal communications. *See* ECF No. 35 at 13, 15-16. On October 14, 2024, the Court ruled on that motion, granting and denying it in part, and ordering Nonparties to log objections to production of protected spousal communications. ECF No. 82 at 13.

On September 16 and 17, 2024, Nonparties attended their respective depositions at Tosh Pork Farm in Henry, Tennessee. During Ms. Cazares Franco's deposition, she testified that she and Mr. Almaras Villegas have been in a civil union for nine years and that a "civil union is considered a formal marriage" in Mexico. Ex. A, Cazares Franco Dep. 53:5-7. Likewise, Mr. Almaras Villegas testified that he and Ms. Cazares Franco have been in a civil union since 2014. ECF No. 79-2, Almaras Villegas Dep. 15:22-16:3. He also explained that "in [Mexico]," "those type of civil unions" are "legally recognized" and "known as common law marriage." *See id.* 15:7-10.

During the depositions, counsel for Nonparties asserted the marital communications privilege when defense counsel asked Nonparties to reveal their private spousal communications. *See, e.g.*, ECF Nos. 79-2, Almaras Villegas Dep. 13:25-14:5; 79-1, Cazares Franco Dep. 18:24-19:9. Nonparties' counsel did, however, allow inquiry into their private communications about the pig's head placed in Mr. Almaras Villegas' area of work, explaining that the testimony constituted a partial waiver of the marital privilege that was limited to that subject matter:

> MS. STEWAR[T]: I'm just going to make a note for the record
> here that we are making a partial waiver of the marital privilege as
> to any communications between the spouses, Katy and Carlos,
> about the pig's head incident on January 23rd, 2024. The waiver is
> narrowly limited to that subject matter and should not be construed
> as a global waiver of the privilege, or as a waiver as to any other
> protected communications between the spouses.

4

*See* ECF Nos. 79-2, Almaras Villegas Dep. 32:14-22; 79-1, Cazares Franco Dep. 42:8-22 (same). Testimony on that subject matter was then elicited and provided. *See, e.g.*, ECF Nos. 79-2, Almaras Villegas Dep 33:17-23; 79-1, Cazares Franco Dep. 43:9-16. Nonparties also testified extensively on the basis for the allegations in Plaintiff's Complaint, including providing an accounting of their respective communications with DOL Investigator Gary Williams ("Investigator Williams"). *See, e.g.*, ECF Nos. 79-1, Cazares Franco Dep. 25:15-38:25; 79-2, Almaras Villegas Dep. 24:9-19.

On October 8, 2024, Defendants filed a Motion to Compel Testimony requesting that the Court (1) order Nonparties to sit for another deposition to testify to their private communications relating to the allegations in Plaintiff's Complaint and their deposition testimony, and (2) award Defendants' fees and costs. *See* ECF. No 78, 79. Because the communications Defendants seek to compel are confidential spousal communications, the Motion should be denied.

## ARGUMENT

Where the Court exercises jurisdiction based on a federal question – as is here – federal common law controls the analysis of the applicability of the marital privilege. *See L.W. v. Knox Cnty Bd. of Educ.*, No. 3:05-cv-274, 2008 WL 820007, at *1 (E.D. Tenn. Mar. 25, 2008); *see also Hancock v. Dodson*, 958 F.2d 1367, 1372-73 (6th Cir. 1992). The marital privilege is validly asserted when "1) at the time of the communication, there was a marriage recognized as valid by state law, 2) the utterances or expressions at issue were intended by one spouse to convey a message to the other, and 3) the utterances or expressions at issue were made in confidence." *United States v. Underwood*, 859 F.3d 386, 390 (6th Cir. 2017) (citing *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993)). The party asserting privilege has the burden of establishing that it applies, but once it is established, "'marital communications are

5

presumptively confidential.'" *United States v. Gray*, 71 F. App'x 485, 488 (6th Cir. 2003)

(quoting *Blau v. United States*, 340 U.S. 332, 333 (1951)). "Because communications between

spouses are presumed confidential, [the party seeking the communications] has the burden of

establishing that the subject conversations are not privileged." *ChampionX, LLC v. Resonance

Sys., Inc.*, No. 3:21-CV-288-TAV-JEM, 2024 WL 1235551, at *6 (E.D. Tenn. Jan. 18, 2024).

(citations omitted). The requesting party may overcome this presumption "'by proof of facts

showing that the communications were not intended to be private.'" *Id.* (citation omitted).

Defendants' Motion should be denied because Nonparties' communications are protected by the

marital privilege, and Defendants have not rebutted the presumption that their communications

are confidential.

    **I.**        **Nonparties Are in a Valid Marriage Under Tennessee Law.**

        Ms. Cazares Franco and Mr. Almaras Villegas are in a marriage "recognized as valid by

state law" for purposes of the marital privilege. *See Knox Cnty Bd. of Educ.*, 2008 WL 820007, at

*1. Tennessee law recognizes marriages validly consummated under foreign law. *See Morgan v.

McGhee*, 24 Tenn. 13, 15 (1844) (ruling that marriages validly consummated pursuant to the

laws of a foreign country are recognized as valid by the laws of Tennessee); *Medrano v. MCDR,

Inc.*, 366 F. Supp. 2d 625, 629 (W.D. Tenn. 2005) (same). Thus, if the relevant state in Mexico

recognizes Nonparties' civil marriage, then the Court should also uphold the marriage as valid

under Tennessee law for purposes of the martial privilege. *See Medrano*, 366 F. Supp. 2d at 629.

Nonparties are in a valid marriage pursuant to the laws of the State of Michoacán, Mexico.

        The Family Code of Michoacán, Mexico recognizes three forms of marital unions: (1)

formal marriage, (2) partnership of cohabitation, and (3) concubinage (also known as civil

marriage or civil union). *See* Codigo Familiar Para El Estado de Michoacán de Ocampo (April

6

2021) [Family Code of the State of Michoacán of Ocampo] Art. 1 (attached hereto as Exhibit B).[2] Under the Michoacán Family Code, a concubinage is formed when, without legal impediment, (1) the couple has cohabitated for at least two years or (2) they conceived a child together. *See* Ex. B at Art. 307. The Code confers a concubinage the rights and privileges of a formal marriage. *See id.* at Arts. 307, 310-311 (referring to "concubinage" as a marriage that has all the rights and obligations inherent to the family); *see also* Jorge A. Vargas, *Concubines Under Mexican Law; with A Comparative Overview of Canada, France, Germany, England and Spain*, 12 Sw. J. L. & Trade Am. 45, 63 (2005) ("The[] legal effects of a concubinage relation fall within the ambit of Mexican Civil Law by explicitly recognizing support and succession rights between the two parties, and reflecting the Legislature's intent to consider concubinage as something akin to civil marriage."). Notably, spouses (or "concubinos") in a Mexican civil marriage are entitled to avail themselves of Mexico's version of the marital communications privilege in civil cases. *See* Código Nacional de Procedimientos Civiles y Familiares (June 2023) [National Code for Civil and Family Proceedings] Art. 271 (attached hereto as Exhibit C).[3]

Nonparties meet the elements of a valid civil marriage under Michoacán law because they satisfy both alternative prerequisites to a "concubinage." They lived together for three years in Michoacán, and they conceived a child together without any legal impediment to doing so. *See* ECF No. 79-2, Almaras Villegas Dep. 15:19-21; 14:24-15:1. Additionally, they both testified that they were in a valid Mexican civil union/ "concubinage." *See id.*15:7-10; ECF No. 79-1,

---

[2] Mexico's legal system is based on civil law, not common law. *See* S*naza v. Howard Johnson Franchise Sys., Inc.*, No. 3:07-CV-0495-O, 2008 WL 5383155, at *7 (N.D. Tex. Dec. 24, 2008). For the full, Spanish version of the Michoacán Family Code, *see* http://congresomich.gob.mx/file/CODIGO-FAMILIAR-REF-5-DE-ABRIL-DE-2021.pdf (last visited October 17, 2024).
[3] For the full, Spanish version of the National Code for Civil and Family Proceedings, *see* https://www.diputados.gob.mx/LeyesBiblio/pdf/CNPCF.pdf (last visited October 17, 2024).

Cazares Franco Dep. 17:16-20; Ex. A, Cazares Franco Dep. 53:1-8. In these circumstances, they have a valid foreign marriage that Tennessee law must uphold.[4]

Defendants' attempts to refute Nonparties' marriage are incorrect and/or irrelevant to the analysis. First, Defendants claim Nonparties testified that they were not married. This assertion is patently false. In Mr. Almaras Villegas' deposition, defense counsel asked the witness: "You haven't been formally married to Katy, correct?" Mr. Almaras Villegas responded that they were in a civil union that is a recognized marriage in Mexico. *See* ECF 79-2, Villegas Dep. 14:8-17. Similarly, Ms. Cazares Franco testified that she and Mr. Almaras Villegas have been in a civil union for nine years and that a "civil union is considered a formal marriage" in Mexico. Ex. A, Cazares Franco Dep. 53:1-8.[5] Additionally, Nonparties testified at the preliminary injunction hearing that they are husband and wife. ECF Nos. 22 at 55:1-2; 26 at 29:13-14.

Second, Defendants claim Nonparties are not married because they could not produce documentary proof of their marriage at the deposition. But documentary proof is not required for an assertion of the marital privilege to be valid. If the marriage is valid under the laws of Michoacán, Mexico, which it is, then it is valid in Tennessee. *Medrano*, 366 F. Supp. 2d at 629.

---

[4] In *Medrano*, defendant raised two state law cases discussing the legal effect of the Mexican concubinage. *Medrano*, 366 F. Supp. 2d at 629. The Court disregarded both cases because neither discussed the laws of the Mexican state where plaintiff was married. *Id*. The Court should also disregard those cases here because they do not discuss the laws of Michoacán and because the cases compare the elements of U.S. common law marriage to a concubinage for purposes of determining standing and property rights of Mexican spouses, neither of which is at issue here. *See, e.g.*, *Rosales v. Battle*, 113 Cal. App. 4th 1178, 1184 (2003) (analyzing the Baja California Civil Code); *Nevarez v. Bailon*, 287 S.W.2d 521, 523 (Tex. Civ. App. 1956) (analyzing the 1952 Chihuahua Civil Code). Here, what matters is not whether Nonparties have a valid common law marriage under U.S. law, but rather that they are in a valid marriage under Mexican law.
[5] That Ms. Cazares Franco responded "No" to the question "Have you and Carlos ever been formally married?" does not change the analysis because, as discussed above, in Michoacán there exists formal marriage and civil marriage, and both types of unions are considered legally valid.

In Michoacán, a document is not required to form a civil marriage. *See* Ex. B at Art 307 (discussing the elements of a concubinage). In any event, Mr. Almaras Villegas testified that he could get a document confirming his marriage with Ms. Cazares Franco in his country, and he also stated that there is a document in the Mexican civil registry confirming they had a child together. ECF No. 79-2, Almaras Villegas Dep. 14:18-15:21. A couple who conceives a child together in Mexico is deemed to be in a valid concubinage under Michoacán law. *See* Ex. B at Art 307. That Nonparties' marriage was formed pursuant to the provisions of the Michoacán Civil Code versus government application makes no difference to its validity for purposes of the marital privilege because it is a legal marriage in Mexico. *C.f. Beller ex rel. Beller v. United States*, 221 F.R.D. 679, 688 (D.N.M. 2003) (recognizing a civil marriage formed under the Navajo Nation Code for purposes of the marital privilege because the couple had the present intention to be husband and wife, cohabitated, and held themselves out as spouses, and denying defendants' motion to reopen their deposition to inquire into spousal communications). Defendants' argument about Nonparties' lack of documentary proof of their marriage is both incorrect and irrelevant and should be disregarded.

Third, Defendants point to two documents each entitled "Questionnaire for Electronic Application of Non-Immigrant Visa" as proof that Nonparties are not married because their marital status is listed as "divorced" on those documents. ECF Nos. 79-4, 79-3, 81-1.[6] These

---

[6] These exhibits contain highly sensitive, personal information about Nonparties that Rule 5.2 and this Court's ECF Policies and Procedures Rule 13.4 require be redacted before filing on the public docket. Defendants have now filed these documents on the public docket *twice*, without redaction, despite having been informed the first time by Nonparties' counsel that the exhibits required redaction. *See* ECF No. 39-1 (first unredacted filing of Ms. Cazares Franco's "Questionnaire for Electronic Application of Non-Immigrant Visa"); 79-3 & 79-4 (second unredacted filing of Ms. Cazares Franco and Mr. Almaras Villegas' "Questionnaire[s] for Electronic Application of Non-Immigrant Visa"). Defendants' repeated failure to follow this Court's rules is strongly suggestive of a disregard for Nonparties' privacy.

9

documents are not dispositive of the validity of their marriage; a person can be both divorced and in a valid marriage when the protected communications were made. Notably, the questionnaires do not include the option identify one's marital status as "civil union" or "concubinage." *See Beller ex rel. Beller*, 221 F.R.D. at 686 ("If federal government forms do not allow a listing for common law spouse . . . [then] that does not alter Larson's intention or consent to enter into a common law marriage, valid under tribal law."). Finally, Ms. Cazares Franco testified that Tosh Pork knew when it hired them in 2021 that she and Mr. Almaras Villegas were in a civil union, Ex. A, Cazares Franco Dep. 53:9-12, whereas there is no testimony or evidence explaining Defendants' exhibits or the circumstances around the purported representations of Nonparties' marital status therein. Those exhibits have no probative value here, especially compared to Nonparties' sworn testimony that they are married.

## II. Defendants Have Not Met Their Burden to Show Nonparties' Communications Were Not Confidential.

Because the marital privilege applies to Nonparties' communications, their communications are presumed confidential, and Defendants have the burden of showing with factual proof that Nonparties "'obviously'" did not intend for the communications to be confidential. *See United States ex rel. Scott v. Humana, Inc.*, No. 3:18-CV-61-GNS-CHL, 2019 WL 7404032, at *4 (W.D. Ky. Sept. 24, 2019) (quoting *Wolfle v. U.S.*, 291 U.S. 7, 14 (1934)). Defendants have not met their burden.

### A. The Communications Defendants Seek to Compel Were Made in Confidence.

Defendants seek to compel two broad categories of protected spousal communications. First, Defendants demand testimony about Nonparties' communications regarding their deposition testimony. ECF No. 78 at 1. Defendants provide no factual proof or argument

whatsoever as to why those spousal communications are not confidential. *See generally* ECF Nos. 78, 79. Their Motion should be denied at least as to those communications.

Second, Defendants seek to compel Nonparties' communications about the "allegations in Plaintiff's complaint." ECF No. 35. Defendants claim that everything Nonparties communicated to each other about the allegations in Plaintiff's Complaint is not protected because they also spoke to the Investigator Williams about the allegations. ECF No. 79 at 7. In making this claim, Defendants do not point to any specific communications or conversations. Instead, they make the implausible argument that when spouses discuss a general subject matter in private and, separately, with a third party, then that entire subject matter is not confidential. This sweeping assertion, if true, would drive a truck through the marital privilege. For this reason, the presumption that spousal communications are confidential can only be rebutted with factual proof that specific conversations were shared or intended to be shared with a third party. *See, e.g.*, *Humana, Inc.*, 2019 WL 7404032, at *3 (stating that "[t]he presence of a third party" or "the intention that the information conveyed be transmitted to a third person" rebuts the presumption) (quoting *Wolfle*, 291 U.S. at 14)). None of Defendants' cited testimony satisfies this standard. Rather, the testimony simply shows that defense counsel elicited responses to general questions asking whether Nonparties were concerned about their relationship and if they have ever told anyone anything about this matter. *See* ECF Nos. 79-1, Cazares Franco Dep. 24:2-3 (asking Ms. Cazares Franco if she told "Carlos anything about this matter that you've never told anybody else?"); 79-2, Almaras Villegas Dep. 22:7-8 (asking Mr. Almaras Villegas if he "ever [told] Katy anything about Tosh Pork, or Tosh Farms that you did not tell anybody else?"). This testimony far from demonstrates that Nonparties obviously intended specific conversations between them to be transmitted to Investigator Williams or any other third party. *See Humana,*

11

*Inc.*, 2019 WL 7404032, at *4 (citation omitted). Thus, this second category of communications that Defendants seek is also protected by the marital privilege.

Defendants have not rebutted the presumption of confidentiality afforded to Nonparties' spousal communications. Their Motion should be denied.

### B. Nonparties Did Not Waive the Privilege Over the Communications Defendants Seek to Compel.

Defendants also argue the martial privilege does not apply because Nonparties waived the privilege. ECF No. 79 at 8. This argument rests on a misstatement of the facts. Contrary to Defendants' assertion, Nonparties did not broadly testify to their private discussions about the allegations in Plaintiffs' Complaint at the TRO/PI hearing. *See id.* The only private, spousal communications they discussed at the hearing relate to the pig's head, and Defendants' own citations to the hearing transcript confirm this fact. *See id*. Defendants produced no evidence of a total waiver because there is none.

To be sure, Nonparties have consistently asserted the marital privilege over their spousal communications. *See, e.g.*, ECF Nos. 35 at 13, 15-16; 35-5 at 3-4, 9-10, 13-16; 35-6 at 35-6 at 3-4, 9-10, 13-16; 79-2, Almaras Villegas Dep. 13:25-14:5; 79-1, Cazares Franco Dep. 18:24-19:9. The revelation of spousal communications about the pig's head constitutes a partial waiver of the privilege. This partial waiver, which has been explicitly articulated as limited to that subject matter, *see supra* at 4, does not waive all private spousal communications. *See Jones v. Illinois Cent. R. Co.*, 617 F.3d 843, 856 (6th Cir. 2010) (explaining that a "'partial waiver . . . permits a client who has disclosed a portion of privileged communication to continue asserting the privilege as to the remaining portions of the same communications'") (citation omitted). The absence of a total waiver is particularly true when, as here, Nonparties have consistently applied the partial waiver to that subject matter only. ECF No. 46 at 5 & n.3 (producing messages

12

between spouses regarding the pig's head); ECF Nos. 79-2, Almaras Villegas Dep. 42:8-22; 79-1, Cazares Franco Dep. 34:14-22; 22 at 78:16-79:21; 26 at 66:6-18. Defendants cannot point to any instances of waiver outside that subject matter because there are none, and the partial waiver, by itself, does not waive all spousal communications. *Jones-McNamara v. Holzer Health Sys.*, No. 2:13-CV-616, 2014 WL 4805412, at *3 (S.D. Ohio Sept. 26, 2014) (denying motion to reopen deposition based on partial waiver of marital privilege because, while the waiver "applies to 'all communications on the same subject matter,' it does not constitute a waiver as to all marital communications of any type") (citation omitted). Defendants' waiver argument is meritless and should be dismissed.

### III. Protecting Communications Between Spouses Outweighs Defendants' Purported Need for the Testimony.

The marital communications privilege ensures "that spouses generally . . . feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law." *Porter*, 986 F.2d at 1018 (quoting *United States v. Byrd*, 750 F.2d 585, 590 (7th Cir. 1984)); *Humana, Inc.*, 2019 WL 7404032, at *3. It exits to "protect[ ] . . . marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails." *United States v. Griffin*, 440 F.3d 1138, 1142 (9th Cir. 2006) *(*quoting *Wolfle*, 291 U.S. at, 14)). Defendants claim their need for the testimony outweighs the important policy considerations underlying the marital privilege, but they fail to support this claim with any evidence or case law. *See* ECF No. 79 at 7-8. Defendants' "interest of justice" argument also fails.

Defendants have not pointed to any specific, private conversations that must be disclosed to further the pursuit of truth here. Instead, they argue that, because Ms. Cazares Franco lodged a "verbal" complaint with DOL, Defendants are entitled to "full discovery into Complainants'

13

discussions with anyone, including themselves, regarding their discussions with Defendants regarding wages and alleged retaliation by Defendants." *See* ECF No. 79 at 8. Defendants do not provide any support for the assertion that Nonparties' verbal complaints are grounds to overturn a valid assertion of the marital privilege. And their suggestion that Nonparties' private communications are somehow the only evidence of Plaintiff's retaliation claim ignores the extensive evidence already exchanged related to that claim, including ESI produced by Nonparties, Nonparties' depositions, Nonparties' TRO/PI hearing testimony, Plaintiff's document and ESI productions, DOL employees' TRO/ PI hearing testimony, and DOL employees' depositions.

Defendants' insistence that "Plaintiff's retaliation claim lives and dies by the statements of Complainants" is hyperbole. ECF No. 79 at 8. Even if it were true – which it is not – Nonparties' statements *to each other* cannot be the crux of the Plaintiff's claim because they do not constitute protected activity for purposes of FLSA. *See* 29 U.S.C. ¶ 215(a)(3). Defendants have not shown that the interests of justice outweigh the public interest in protecting marital confidences.

## IV.   Defendants Are Not Entitled to Fees and Costs.

Should the Court grant Defendants' Motion, Defendants' request for fees and costs should be denied because Nonparties' position that the marital communications privilege applies to their private conversations is substantially justified and based on a genuine dispute. Pursuant to Rule 37(a)(5)(A), if a court grants a motion to compel, it may require payment of "the movant's reasonable expenses incurred in making the motion, including attorney's fees." However, the court "must not order this payment if" the nondisclosure was "was substantially justified" or "other circumstances make an award of expenses unjust." *Id.* "A position is

14

PageID 973

'substantially justified' if it raises an issue about which 'there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *ChampionX, LLC*, 2024 WL 1235551, at \*7 (quoting *Doe v. Lexington-Fayette Urb. Cnty. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (denying request for fees and costs related to a motion to compel testimony withheld pursuant to the spousal communications privilege)). As discussed above, *see supra* Section I, Nonparties' position that they are in a valid marriage for purposes of the marital privilege is substantially justified, and there was a good faith basis to invoke the privilege at the depositions to avoid waiver. The Court should deny Defendants' request for fees and costs.

Additionally, should the Court grant Defendants' motion and order Nonparties to sit for a continued deposition, Nonparties' respectfully request the Court order the depositions to be conducted remotely via videoconference to avoid the substantial time and resources involved in Nonparties, their counsel, and the parties' counsel traveling to Henry, Tennessee. This request will not prejudice Defendants, as the examining defense attorney who attended Nonparties' September 16 and 17 in-person depositions did so via Zoom.

## CONCLUSION

For all the abovementioned reasons, the Court should deny Defendants' Motion to Compel Testimony.

Date: October 22, 2024

Respectfully Submitted,

s/ Meredith B. Stewart\*
Meredith B. Stewart
LAW OFFICES OF MEREDITH B. STEWART, LLC
812 Lyons Street
New Orleans, LA 70115
Tel: (504) 615-3334
stewart.meredith@outlook.com

15

| | |
|---|---|
| Efrén C. Olivares* <br> SOUTHERN POVERTY LAW CENTER <br> 150 E Ponce de Leon Ave., <br> Suite 340 <br> Decatur, GA 30030 <br> Tel: (404) 521-6700 <br> Efren.olivares@splcenter.org | Alan B. Howard* <br> Gabriella Romanos* <br> PERKINS COIE LLP <br> 1155 Avenue of the Americas <br> 22nd Floor <br> New York, NY 10036-2711 <br> Tel: (212) 262-6900 <br> AHoward@perkinscoie.com <br> GRomanos@perkinscoie.com <br><br> Counsel for Nonparties María Concepción Cazares Franco and Carlos Alberto Almaras Villegas <br><br> *Admitted *pro hac vice* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 22, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's filing system to all parties and counsel indicated on the electronic filing receipt.


Date: October 22, 2024                                          s/ Meredith B. Stewart